557 So.2d 152 (1990)
John Sidney RAEHN, Appellant,
v.
Barbara Beals RAEHN, Appellee.
No. 89-16.
District Court of Appeal of Florida, First District.
February 15, 1990.
Judith Petersen, Tallahassee, for appellant.
Jerome M. Novey of Novey & Mendelson, Tallahassee, for appellee.
ZEHMER, Judge.
John Raehn appeals the final judgment of dissolution of his marriage with his former wife, Barbara. He urges error on the grounds that the amounts ordered for child support payments, payments for debts of the parties, and payment of the wife's litigation costs and attorneys' fees exceed his financial ability. After carefully reviewing the record we are unable to determine with any degree of certainty the factual basis for the decisions of the several trial judges that participated in this case below. We reverse and remand for further proceedings.
On October 17, 1986, Barbara Raehn filed a petition for dissolution of marriage. Numerous motions were filed and orders entered over the ensuing eight months. Financial affidavits were filed by each of the parties prior to final hearing held on June 22, 1987, before Judge George Harper. After the hearing and pursuant to the judge's request, the parties filed summaries of the evidence, proposed orders, and argument in support of their respective positions. The primary issues revolved around John Raehn's financial condition. Suffice it to say that his records were a mess and his financial condition was complicated by the apparent failure of his various businesses and consequent demands for payment by various creditors. Barbara Raehn contended that her husband had been secreting funds and assets, and that the court should impute a significantly larger income to him than his records tended to indicate, regardless of his testimony about his diminished income. John Raehn presented testimony and documents indicating that he had a six-figure negative net worth and only $1200 per month income. The testimony adduced and the respective arguments made it apparent that the credibility of the witnesses establishing John Raehn's financial situation constituted the primary question for resolution by the trial court.
*153 In view of Judge Harper's serious illness, no final judgment was entered for several months. In January 1988, both parties executed and filed a joint motion for entry of judgment and other relief. The joint motion noted Judge Harper's illness and his inability "to consider the evidentiary exhibits, his notes and the arguments of counsel to resolve the case" and further stipulated, among other things, that:
3. Because of his unfortunate illness, the court has never issued a final judgment.
4. A court reporter recorded the proceedings before the court, but no transcript has been prepared.
5. The parties are without funds to pay for the transcript.
6. The absence of a ruling in this case is causing financial and personal hardship for both parties and their children.
(R. 154-155). The parties requested assignment of the case to another judge, an order that the transcript be paid from public funds, and an immediate dissolution of the marriage reserving jurisdiction to pass on the division of property, child support, alimony, and attorneys' fees at a later date. As a result, the case was reassigned to Judge George Reynolds, as acting circuit judge. On January 14, 1988, Judge Reynolds entered a final judgment dissolving the marriage, ordering the parties to comply with the stipulations made in their joint motion, and reserving jurisdiction to resolve all remaining issues. (R. 156).
No order was ever entered on the request for the preparation of a transcript of the hearing before Judge Harper at public expense; however, the court reporter prepared a transcript and certified it on March 9, 1988. The record does not reflect how the court reporter was paid. The transcript bears a filing stamp in the circuit court dated January 25, 1989.
Judge Reynolds did not remain with the case very long. The case was reassigned to Judge Hal McClamma, as acting circuit judge, sometime between March and May, 1988. The wife filed a motion to enforce portions of the stipulation approved in the final judgment, and on May 5, 1988, Judge McClamma entered an order directing the husband to show cause why he should not be held in contempt for not complying with the stipulation and made it returnable on June 13, 1988.
On May 25, 1988, Judge McClamma, without further notice to the parties and counsel and without a hearing thereon, entered an order entitled Amendment to the Final Judgment of Dissolution of Marriage. This amended judgment recited that the court had "reviewed the recorded testimony of witnesses, heard additional arguments of counsel, and [was] otherwise duly advised in the premises... ." (R. 186).[1] The amended judgment contained certain provisions for child custody, and ordered the husband to pay child support in the amount of $350.00 per month for each of the two children of the marriage commencing on June 5, 1988. It made a division of certain real and personal property and certain liabilities, and required the parties to maintain life insurance in substantial amounts to secure their support obligations. The judgment also ordered the husband to pay one half of the wife's attorney's fees and costs and reserved jurisdiction to determine the reasonable amount of such fees and costs at a later time. We note, however, that the amended judgment contained no specific findings of fact as to the financial condition and ability of either party other than the simple recitation that "the Husband has the present ability to pay $350.00 per month, per child in child support." (R. 187). As the predicate for requiring the husband to pay one half of the wife's attorneys' fees and costs, the amended judgment recited, "The Court finds the difficulty of this litigation [was] enhanced by the Husband... ." (R. 187).
*154 On June 6, 1988, John Raehn filed a motion for rehearing alleging, among other things, that when Judge Reynolds entered the original judgment of January 14, 1988, "the parties agreed with Judge Reynolds that the court would read the transcript of the hearing of June 22, 1987, and that the court would set another hearing date for the purpose of up-dating the information before the court and argument as to allocation of debts, assets and child support." (R. 191). It further alleged that when the parties received notice of reassignment of the case to Judge McClamma, "the parties were still under the impression that the court intended to have further hearings before a judgment was entered." (R. 192). The motion alleged that the amendment to the final judgment was defective for several reasons, including its failure to take into consideration substantial changes in the financial situation of the parties, and requested the court to set a hearing for the purpose of updating the financial information and making findings of fact as to the financial abilities of the parties to contribute to child support and payment of attorneys' fees. On August 12, 1988, John Raehn also filed a motion for the disqualification of Judge McClamma, alleging that Raehn believed Judge McClamma was prejudiced against him based on the judge's remarks and rulings made during hearings in small claims court concerning John Raehn's lack of credibility. The motion recited that counsel had intended to raise this matter at an anticipated hearing before Judge McClamma ruled on the disputed issue and entered an amended final judgment. So far as the record reflects, this motion for disqualification was neither granted nor denied. For reasons not made apparent in the record, however, the case was again reassigned, this time to Judge John Crusoe, as acting circuit judge. In the meantime, John Raehn filed a motion for enforcement of the court's amended judgment.
On December 5, 1988, Judge Crusoe entered an order that: denied the husband's motion for rehearing; ordered him to show cause why he should not be held in contempt for failing to pay child support in the amounts previously awarded, returnable on January 5, 1989; granted the husband's motion to enforce; and set the amount of the wife's attorneys' fees and costs and ordered appellant to pay one half thereof ($9,383.88). (R. 208-09). The order makes no specific findings as to the financial inability of the wife to obtain competent legal counsel or the economic ability of the husband to provide the same. The order does not recite whether the court had available and reviewed the yet-to-be-filed transcript of the June 22, 1987, hearing before Judge Harper.[2]
After denial of his motion for rehearing, John Raehn appealed, raising several issues. First, he contends that the trial court erred in awarding child support in excess of his ability to pay. Second, he argues that updated financial information should have been considered in making the award of child support, distribution of debts, and attorney's fees and costs. Third, he contends that the court erred in distributing the liability for debts far in excess of the parties' relative ability to pay. Fourth, he contends the award of attorney's fees to the wife without consideration of the relative financial circumstances of the parties was error.
We vacate those portions of the amended final judgment awarding child support, assigning debts and liabilities, and ordering the husband to pay a portion of the wife's attorney's fees and costs, and remand the case for a new trial on these issues. We are impelled to this conclusion because of the manner in which the case was heard and decided by successive judges without benefit of any detailed findings of fact demonstrating the factual basis for the awards. Only Judge Harper heard the witnesses testify, a factor considered most *155 material in judging credibility.[3] Judge McClamma made critical rulings on the contested issues based only on the trial transcript, financial documents in evidence, and the parties' written submissions filed shortly after the final hearing was held in June 1987. Our review of the trial transcript and the large box of exhibits reveals no clear evidentiary support of appellant's financial ability to make the objected-to payments of child support, marital debts, and the wife's attorneys' fees and costs. The only basis to support the award of these amounts is to impute income to appellant in the range of $30,000 to $50,000 per year, but to do that requires reliance primarily on financial data of the husband's financial condition in 1985. This ignores uncontradicted evidence in the record showing financial reverses sustained by the husband in 1986 and 1987. Most importantly, it directly contradicts the parties' joint stipulation in December 1987 that neither of them had sufficient funds to pay for the trial transcript. We conclude that no reasonably reliable evaluation of John Raehn's financial condition in 1987 and 1988 could be made simply by reviewing this testimony and documentary evidence without hearing further evidence and argument from the parties.
A further complicating factor is the presence of the motion to disqualify Judge McClamma that was left unresolved on this record. Although Judge McClamma was taken off the case shortly after the motion was filed, we have no way of knowing whether this reassignment was predicated on the motion or for other undisclosed reasons. If the motion were in fact well taken (and we make no suggestion that it was or was not), the amended final judgment entered by Judge McClamma would have doubtful validity, and the motion for rehearing considered by Judge Crusoe would have to be judged from that standpoint. Furthermore, it was all but impossible for Judge Crusoe to give detailed consideration to the factual basis for the motion for rehearing in the absence of detailed findings of fact by Judge McClamma. Moreover, there is no indication in the record that Judge Crusoe had the June 22, 1987, transcript before him when he ruled upon the motion for rehearing, since the transcript was not filed with the clerk of the circuit court until January 1989, well after the motion for rehearing had been denied.
The absence of detailed findings of fact to support the general conclusion in the amended judgment that the husband had the financial ability to pay the amount of child support ordered leaves it all but impossible for this court to give meaningful appellate review of the financial evidence and affirm its sufficiency to support the awards. In these circumstances it is appropriate to vacate the awards and remand for further evidence and detailed findings of fact. Eisner v. Eisner, 513 So.2d 673 (Fla. 1st DCA 1987); McLendon v. McLendon, 483 So.2d 498 (Fla. 1st DCA 1986). See also Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Strickler v. Strickler, 548 So.2d 740 (Fla. 1st DCA 1989); Clemson v. Clemson, 546 So.2d 75 (Fla. 2d DCA 1989); Lee v. Lee, 544 So.2d 1083 (Fla. 1st DCA 1989).
Likewise, we cannot discern a legally sufficient evidentiary basis for the allocation of responsibility for attorney's fees and the distribution of liabilities and assets. The finding that the "difficulty of this litigation [was] enhanced by the husband" is not alone sufficient to require him to pay the wife's attorney's fees and litigation costs. We vacate these awards because the appealed judgment does not set forth detailed findings of fact supporting the basis for assigning debts to the husband and showing whether or not the wife had the financial ability to obtain competent legal counsel. See Ball v. Ball, 554 So.2d 629 (Fla. 4th DCA 1989); Mauldin v. Mauldin, *156 493 So.2d 1103 (Fla. 5th DCA 1986); Lewis v. Lewis, 485 So.2d 855 (Fla. 2d DCA 1986); Ariko v. Ariko, 475 So.2d 1352 (Fla. 5th DCA 1985); Child v. Child, 474 So.2d 299 (Fla. 3d DCA 1985), review denied, 484 So.2d 7 (Fla. 1986); Seitz v. Seitz, 471 So.2d 612, 614 (Fla. 3d DCA 1985).
The provisions of the amended final judgment dissolving the marriage and the provisions respecting child custody and visitation are not challenged on appeal and remain unaffected by this decision. The cause is remanded for a new trial on the disputed financial issues.
REVERSED and REMANDED.
THOMPSON and BARFIELD, JJ., concur.
NOTES
[1] Presumably, the recitation referred to the unfiled transcript of testimony given at the final hearing before Judge Harper which had been completed by the court reporter in March 1988. In addition, each of the parties had filed a financial statement as of final hearing. The wife's affidavit indicated a total gross monthly income of $1,963.00, and the husband's affidavit indicated a total gross monthly income of $1,225.00. (R. 128, 163.)
[2] The order does contain the recitation, "The Court having heard argument of counsel, testimony of witnesses, and being otherwise advised in the premises," but we do not construe that recitation as meaning that the court heard the entire case de novo. We conclude that the "testimony of witnesses" referred to related solely to the wife's and husband's motions to enforce certain provisions in the amended judgment and the amount of attorneys' fees and costs.
[3] When the trier of fact determines witness credibility on the basis of transcribed deposition testimony, a reviewing appellate court is equally able to judge such credibility. See McCabe v. Bechtel Power Corp., 510 So.2d 1056, 1059 (Fla. 1st DCA 1987); Dukes v. Dukes, 346 So.2d 544, 545 (Fla. 1st DCA 1976). We do not decide this appeal on the basis of witness credibility, however, because we conclude that the manner in which the case proceeded requires a new trial de novo.